**Mark A. Miller, 9563**
miller.mark@dorsey.com
**Elliot J Hales, 16684**
hales.elliot@dorsey.com
**DORSEY & WHITNEY LLP**
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373


*Attorneys for Plaintiff Merit Systems, Inc.*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Merit Medical Systems, Inc., | **COMPLAINT FOR PATENT INFRINGEMENT** |
| Plaintiff, | |
| | Civil No.  2:25-cv-00390 |
| v. | |
| | Judge: |
| Medline Industries, LP, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff Merit Medical Systems, Inc. ("Plaintiff" or "Merit"), by and through its attorneys, Dorsey & Whitney LLP, for its complaint against Defendant Medline Industries, LP ("Defendant" or "Medline"), alleges the following:

### NATURE OF THE ACTION AND SUMMARY OF RELIEF SOUGHT

This is a patent infringement action through which Merit seeks to immediately and permanently enjoin Medline's blatant and willful infringement of Merit's patent rights relating to its patented vascular inflation devices and to recover all monetary damages caused thereby. Specifically, pursuant to the Patent Act, 35 U.S.C. §§ 271, 283-285, Merit seeks to immediately and permanently enjoin Medline from making, using, selling, offering to sell and importing its infringing digital inflation device sold under the NAMIC brand (the "Infringing NAMIC Device"),

to recover all damages caused by Medline's infringing actions, and to recover trebled damages and Merit's attorneys' fees in view of Medline's willful patent infringement.

## PARTIES

1.      Plaintiff Merit Medical Systems, Inc. is a Utah corporation with its principal place of business at 1600 West Merit Parkway, South Jordan, Utah 84095.

2.      Defendant Medline Industries, LP is an Illinois limited partnership with a principal place of business at 3 Lakes Dr., Northfield, Illinois 60093.

3.      On information and belief, Medline also has an established distribution center in this District located, upon information and belief, at 264 S 5750 W, Salt Lake City, Utah 84104.

4.      On information and belief, Medline is registered to do business in Utah and has designated the Corporation Service Company, 15 West South Temple, Suite 600, Salt Lake City, Utah, 84101 as its agent for service of process in the state of Utah.

5.      Medline has sold and/or offered the Infringing NAMIC Device for sale to at least one hospital located in Utah as well as other hospitals across the United States. Upon information and belief, Medline imports, sells, offers to sell, and/or uses the Infringing NAMIC Device throughout the United States, including in this District, which actions infringe Merit's patent rights.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement under the United States Patent Act, specifically 35 U.S.C. § 271. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Medline because it operates a place of business in this District and because Medline has committed acts of infringement within this District by selling and/or offering for sale the Infringing NAMIC Device in Utah.

2

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because the Medline has engaged, and continues to engage, in infringing activity in this District, and has a regular and established place of business in Utah.

## FACTUAL BACKGROUND

9.      Inflation devices are medical tools used to inflate balloons during interventional medical procedures like angioplasty, urological procedures, and balloon dilation. The devices help control the inflation process, monitor pressure, and ensure precise inflation. There are various types of inflation devices, including manual, digital, and automated models, designed for specific procedures and pressure requirements. The overall inflation device market was valued at US $577 million in 2023 and is projected to reach US $937 million by 2032.[1] The bulk of inflation device sales occur in North America.

## MERIT'S PATENTED INVENTION

10.     Merit has been a market leader in vascular medical device technology, including inflation device technology, for over 30 years.

11.     Merit designs, develops, manufactures, and sells inflation devices with digital displays to clinics and hospitals globally, including in Utah.

12.     About 15 years ago in 2010, Merit launched an improved inflation device called the Blue Diamond® Digital Inflation Device, pictured below. The Blue Diamond® device offers an integrated digital gauge and timer with the ability to record and recall prior inflation information, ensuring not only precise inflation pressure, but also the ability to track procedure data.

---

[1] "Inflation Devices Market Size, Share & Segmentation by Display Type, by Application, by End User, and Global Forecast 2024-2032", dated December 2024, Report Code: SNS/HC/4907, https://www.snsinsider.com/reports/inflation-devices-market-4907, retrieved April 24, 2025.

4917-8994-9498\7



13.     In or around 2018, Merit launched the DiamondTOUCH<sup>TM</sup> Digital Inflation Device, pictured below.  The DiamondTOUCH<sup>TM</sup> operates in the same manner and provides the same benefits as the Blue Diamond®, with the exception of the DiamondTOUCH<sup>TM</sup> having a different handle that allows for one-handed operation.



14.     Given the innovative nature of Merit's inflation device technology, including the Blue Diamond® and DiamondTOUCH<sup>TM</sup> devices (hereafter the "Patented Diamond Devices"), Merit applied for patents to protect Merit's exclusive rights in its inflation device inventions,

4917-8994-9498\7

including Merit's right to maintain exclusivity in the market for innovations found in the Patented Diamond Devices.

15.    Recognizing the novelty and utility of Merit's inflation device inventions, the United States Patent and Trademark Office ("USPTO") granted Merit several patents to protect its proprietary innovations, including those embodied in the Patented Diamond Devices.

16.    Among Merit's inflation device patents is United States Patent No. 7,892,202 (the "'202 patent"), titled "System and Method for Inflation Syringe with Improved Display." A copy of the '202 patent is attached as Exhibit A. The USPTO issued the '202 patent on February 22, 2011.

17.    The '202 patent is valid and enforceable, and is assigned to Merit.

18.    Each of the Patented Diamond Devices practices one or more claims of the '202 patent.

19.    The USPTO also granted Merit United States Patent No. 8,118,776 (the "'776 patent"), titled "System and Method for Inflation Syringe with Improved Display and Modularized Component Assembly." A copy of the '776 patent is attached as Exhibit B. The USPTO issued the '776 patent on February 21, 2012.

20.    The '776 patent is valid and enforceable, and is assigned to Merit.

21.    Each of the Patented Diamond Devices practices one or more claims of the '776 patent.

22.    The USPTO also granted Merit United States Patent No. 8,398,588 (the "'588 patent"), titled "System and Method for Inflation Syringe with Improved Display and Modularized Component Assembly." A copy of the '588 patent is attached as Exhibit C. The USPTO issued the '588 patent on March 19, 2013.

4917-8994-9498\7

23.     The '588 patent is valid and enforceable, and is assigned to Merit.

24.     Each of the Patented Diamond Devices practices one or more claims of the '588 patent.

25.     The '202 patent, '776 patent, and '588 patent (collectively, the "Asserted Patents") claim novel and non-obvious methods and apparatuses for providing both numeric and non-numeric indications of an inflation pressurization associated with an inflation syringe, which was a significant improvement over prior art devices, including Merit's own prior art devices.

26.     Merit has marked and continues to mark its successful Blue Diamond® Digital Inflation Device with the Asserted Patent numbers. *See* https://www.merit.com/about/patents/.

27.     Since their launch, the Patented Diamond Devices have garnered significant praise from customers and have generated millions of dollars in annual revenues.

28.     Today, Merit sells the Patented Diamond Devices to more than 700 hospitals across the country.

## MEDLINE'S INFRINGEMENT

29.     After Medline acquired the NAMIC® brand of fluid management products in 2019 from Angiodynamics, Inc., Medline's analog NAMIC inflation devices (depicted below) have directly competed with Merit's Patented Diamond Devices in the vascular device market.



Inflation Device

30.     Medline has deep experience and knowledge in intellectual property and patent matters, and has been a party in nearly forty federal court patent infringement cases, including over twenty cases as the patent-enforcing plaintiff in district courts around the country over the last two decades.

31.     On information and belief, Medline knew of, or was on notice of, the Asserted Patents at least because of Medline's sophistication and expertise in intellectual property matters and because of Merit's continuous marking of the Blue Diamond® device with the numbers of the Asserted Patents over these years of direct competition.

32.     Due to Medline's sophistication in patent matters and its direct competition with Merit, on information and belief, Medline had actual knowledge of the Asserted Patents owned by Merit prior to its infringing acts described herein.

33.     For 15 years, Merit enjoyed the exclusive rights to its inflation device technology and inventions under the Asserted Patents, and competitors, including Medline, respected those rights and competed using their own designs and technology.

4917-8994-9498\7

34.     Merit's exclusive rights under the Asserted Patents will remain in force for approximately another four years, during which time Merit has expected to continue to have exclusivity to its technology and sufficient time to prepare for the competitive landscape to change when its patent rights expire via developing new designs for the future or otherwise.

35.     In March 2025, however, Merit's employees discovered that Medline, rather than waiting for Merit's valid patent rights to expire, jumped the gun and began offering a new NAMIC digital inflation device (the Infringing NAMIC Device) to some of Merit's customers or potential customers in certain hospitals around the country, including in Utah.

36.     Medline's Infringing NAMIC Device is a blatant copy of Merit's patented inventions embodied in its Patented Diamond Devices and is designed to capitalize on the success of Merit's products.

37.     Merit manufactures its Patented Diamond Device in Utah, strengthening the national and Utah economies and generating quality jobs for people in Utah.

38.     On information and belief, Medline has the Infringing NAMIC Device manufactured in China at a significantly lower cost such that Medline is severely undercutting Merit's price for the Patented Diamond Devices, in some cases by as much as 50%, thereby eroding Merit's ability to set and maintain prices for its patented innovations.

39.     On information and belief, some of the hospitals to whom Medline has presented the Infringing NAMIC Device have already decided to adopt Medline's low-cost, knock-off device to replace the Merit's Patented Diamond Devices after their inventory of the Merit devices is exhausted.

40.     Medline's blatant and willful infringement of Merit's Asserted Patents with a cheap knock-off device will result in significant price erosion, lost market share, impaired business

8

relationships, and reputational harm if Medline is allowed to continue offering and selling the Infringing NAMIC Device. All these harms are and will be irreparable and cannot be remedied via monetary damages alone.

41. The Infringing NAMIC Device is an inflation syringe configured to allow a medical professional to selectively provide a desired amount of inflation pressurization during a medical procedure to inflate a medical instrument. The Infringing NAMIC Device includes a barrel defining an inner lumen and configured to hold a desired inflation pressure and a plunger configured to be received within the inner lumen of the barrel to increase pressurization within the barrel.





42.     The Infringing NAMIC Device has a pressure sensor, which is a sensor apparatus for sensing inflation pressurization within the barrel.



43.     The Infringing NAMIC Device has a display mounted to the exterior of the barrel and configured to link to the pressure sensor when the display is mounted to the barrel to display the inflation pressurization detected by the pressure sensor within the barrel.



4917-8994-9498\7



Non-numeric indicia

Numeric indicator

44.    The Infringing NAMIC Device's display includes a numeric indicator which provides a numeric indication of a current inflation pressurization within the barrel. As shown above, the display shows the inflation pressure of "2.6 atm/0.1MPa."

45.    The Infringing NAMIC Device's display also includes a plurality of discrete non-numeric indicia which are actuated to provide a non-numeric representation of the current inflation pressurization, as shown above.

46.    The non-numeric indicia on the display are actuated in a progressive manner such that non-numeric indicia representing values less than the current inflation pressurization value remain actuated as the pressurization increases and decreases, as shown in the figure above. The three non-numeric indicia representing values less than the current inflation pressurization value of 2.6 atm/0.1MPa remain actuated as the pressurization increased to 2.6 atm/0.1MPa.

47.    The non-numeric indicia simultaneously provide a non-numeric representation of a value that is different from the current inflation pressurization, as shown below.

11



Non-numeric indicia simultaneously providing a non-numeric representation of a different value (for example, the prior maximum pressurization) (not the current inflation pressurization)

Array of non-numeric indicia

48.    The non-numeric indicia on the display of the Infringing NAMIC Device provide a visual representation of the inflation pressurization along a range of possible inflation pressures, as shown by the range of 0 to 30 in the above figure.

49.    The plurality of non-numeric indicia on the display of the Infringing NAMIC Device are arranged in an array, as shown in the above figure.

50.    The array of non-numeric indicia on the display of the Infringing NAMIC Device includes a first indicium which corresponds with a first pressurization value and a second indicium that corresponds with a second pressurization value, as shown below.



Second indicium corresponding to second pressurization value (prior maximum pressurization) of 30 atm/0.1MPa

First indicium corresponding to first pressurization value of 2.6 atm/0.1MPa

51.    The non-numeric indicia on the display of the Infringing NAMIC Device further provide non-numeric representation of a maximum pressurization within the barrel during the most recent inflation routine. For example, if a first inflation routine goes to 30 atm/0.1MPa, then back to 0, 30 atm/0.1MPa will remain as the high "tick" mark on the display. During a second pressurization that goes to 10 atm/0.1MPa, 30 atm/0.1MPa will remain displayed.

52.    The non-numeric indicia on the display of the Infringing NAMIC Device are arranged in a curvilinear configuration, as shown in the figure above (the corners are curved).

53.    The non-numeric indicia on the display of the Infringing NAMIC Device are arranged in a non-linear configuration, as shown in the figure above.

54.    The Infringing NAMIC Device necessarily includes a display processor because it has a pressure sensor and a display that displays the pressurization information from the sensor.

4917-8994-9498\7

 

55.     The Infringing NAMIC Device has a display module coupled to the display processor to display information contained in the signals from the sensor apparatus, wherein the display module comprises a numeric indicator which provides a numeric indication of a current inflation pressurization within the barrel.



Numeric indicator

56.     The Infringing NAMIC Device's display includes a plurality of non-numeric indicia which are actuated in a progressive manner, such that non-numeric indicia representing values less than the current inflation pressurization value remain actuated as the pressurization within the barrel increases and decreases, as shown below. The three non-numeric indicia

14

representing values less than the current inflation pressurization value of 2.6 atm/0.1MPa remain

actuated as the pressurization increased to 2.6 atm/0.1MPa.



57.    The Infringing NAMIC Device has a display housing comprising a base and a hood,

wherein the base is configured to attach to the barrel and to receive the display processor and

display module, and wherein the display hood is configured to couple to the display base and

secure the display processor and display module within the display housing, as shown below.



58.     The Infringing NAMIC Device is assembled by obtaining an inflation syringe with a barrel.



Barrel

59.     On information and belief, Medline tests the integrity of the Infringing NAMIC Device via its Corporate Quality division that has a "staff of more than 300 highly trained employees oversee[ing] all quality-related functions for Medline's 100,000-plus products."[2] "The team includes chemists, microbiologists, statisticians, RNs and engineers whose combined knowledge and experience contribute to [Medline's] goal of continuous improvement. In addition, numerous technicians, inspectors, coordinators and administrative personnel perform vital functions on a daily basis to assure effective implementation of [Medline's] Quality Process." Medline's "Quality Assurance" function "guarantees that Medline products meet or exceed all relevant requirements and standards." And Medline's "Quality Control" function "is the final check prior to distribution, where we confirm that [the] design and validation processes have yielded products that meet our customers' needs."

---

[2] *See* https://www.medline.com/about-us/quality-assurance/.

60.    The Infringing NAMIC Device is assembled by obtaining a processor adapted to process signals from a pressure sensor. The Infringing NAMIC Device must have a processor because it has a sensor and a display that displays pressurization information from the sensor.



61.    On information and belief, Medline tests the operating of the processor of the Infringing NAMIC Device given Medline's expensive Quality Control department and resources referenced above.

62.    The Infringing NAMIC Device is assembled by obtaining a display module adapted to display numeric and non-numeric information communicated in the signals received from the pressure sensing apparatus and processed by the processor.



4917-8994-9498\7

63.    On information and belief, Medline tests the operation of the display module of the Infringing NAMIC Device given Medline's expensive Quality Control department and resources referenced above.

64.    The Infringing NAMIC Device is assembled by securing a housing base to a mounting point on the barrel.



Barrel

Base secured to a
mounting point
on the barrel

65.    The Infringing NAMIC Device is assembled by coupling the processor to the display module. The processor must be coupled to the display module because the display of the Infringing NAMIC Device displays information from the pressure sensor.

66.    On information and belief, Medline tests the processor and the display module of the Infringing NAMIC Device when coupled together, given Medline's expensive Quality Control department and resources referenced above.

67.    The Infringing NAMIC Device is assembled by placing the processor and the display model is the housing base.

68.    In assembling the Infringing NAMIC Device, the processor is positioned to receive signals from the pressure sensor that detects pressurization within the barrel. The

processor must be operably coupled to the pressure sensor and the display for the display to display information from the pressure sensor.



69.    The Infringing NAMIC Device is assembled by coupling a housing hood to the housing base. The housing hood of the Infringing NAMIC Device is adapted to secure the processor and display module.



70.     On information and belief, Medline tests the operation of the fully assembled Infringing NAMIC Device given Medline's expensive Quality Control department and resources referenced above.

71.     Based on the foregoing facts, the Infringing NAMIC Device satisfies each and every limitation of at least claims 1, 2, 3, 4, 5, 6, and 8 of the '202 patent.

72.     Based on the foregoing facts, the Infringing NAMIC Device satisfies each and every limitation of at least claim 1 of the '776 patent.

73.     Based on the foregoing facts, the process for making the Infringing NAMIC Device satisfies each and every limitation of at least claim 1 of the '558 patent.

## FIRST CAUSE OF ACTION
## INFRINGEMENT OF THE '202 PATENT

74.     Merit hereby incorporates by reference all preceding paragraphs in support of the First Cause of Action by this reference.

75.     On information and belief, Medline imports the Infringing NAMIC Devices into the United States from China where they are manufactured. On information and belief, Medline also offers for sale, sells, and uses the Infringing NAMIC Devices in the United States, including in Utah.

76.     Because each Infringing NAMIC Device satisfies each and every limitation recited in at least claims 1, 2, 3, 4, 5, 6, and 8 of the '202 patent, Medline's acts of making, using, offering to sell, selling, and/or importing the Infringing NAMIC Devices in the United States constitute acts of direct infringement of the '202 patent under 35 U.S.C. § 271, including at least § 271(a).

77.     Given Medline's actual notice of the '202 patent and Merit's allegations of infringement, Medline's infringing activity has demonstrated and continues to demonstrate a

deliberate and conscious decision to infringe the '202 patent, or at the very least a reckless disregard of Merit's patent rights and therefore constitutes willful infringement.

78.     Medline's continued infringing activity has caused and will continue to cause irreparable injury to Merit.

79.     Merit is entitled to a preliminary and permanent injunction under 35 U.S.C. § 283 prohibiting Medline from further making, using, offering to sell, selling, and importing the Infringing NAMIC Device and any other infringing product in order to prevent further irreparable harm to Merit.

80.     Merit is entitled to recover all monetary damages caused by Medline's infringing conduct under 35 U.S.C. § 284, including lost profits and/or reasonable royalties.

**SECOND CAUSE OF ACTION**
**INFRINGEMENT OF THE '776 PATENT**

81.     Merit hereby incorporates by reference all preceding paragraphs in support of the Second Cause of Action by this reference.

82.     On information and belief, Medline imports the Infringing NAMIC Devices into the United States from China where they are manufactured. On information and belief, Medline also offers for sale, sells, and uses the Infringing NAMIC Devices in the United States.

83.     Because each Infringing NAMIC Device satisfies each and every limitation recited in at least claim 1 of the '776 patent, Medline's acts of making, using, offering to sell, selling, and/or importing the Infringing NAMIC Device in the United States constitute acts of direct infringement of the '776 patent under 35 U.S.C. § 271, including at least § 271(a).

84.     Given Medline's actual notice of the '776 patent and Merit's allegations of infringement, Medline's infringing activity has demonstrated and continues to demonstrate a

deliberate and conscious decision to infringe the '776 patent, or at the very least a reckless disregard of Merit's patent rights and therefore constitutes willful infringement.

85.    Medline's continued infringing activity has caused and will continue to cause irreparable injury to Merit.

86.    Merit is entitled to a preliminary and permanent injunction under 35 U.S.C. § 283 prohibiting Medline from further making, using, offering to sell, selling, and importing the Infringing NAMIC Device and any other infringing product in order to prevent further irreparable harm to Merit.

87.    Merit is entitled to recover all monetary damages caused by Medline's infringing conduct under 35 U.S.C. § 284, including lost profits and/or reasonable royalties.

## THIRD CAUSE OF ACTION
## INFRINGEMENT OF THE '588 PATENT

88.    Merit hereby incorporates by reference all preceding paragraphs in support of the Third Cause of Action by this reference.

89.    On information and belief, Medline imports the Infringing NAMIC Devices into the United States from China where they are manufactured, and no manufacturing steps are performed stateside after importation. On information and belief, Medline also offers for sale, sells, and uses the Infringing NAMIC Devices in the United States.

90.    Because the method of assembling the Infringing NAMIC Device satisfies each and every limitation recited in at least claim 1 of the '588 patent, Medline's acts of making, using, offering to sell, selling, and/or importing the Infringing NAMIC Device in the United States constitute acts of direct infringement of the '588 patent under 35 U.S.C. § 271, including at least § 271(g).

4917-8994-9498\7

91.     Given Medline's actual notice of the '588 patent and Merit's allegations of infringement, Medline's infringing activity has demonstrated and continues to demonstrate a deliberate and conscious decision to infringe the '588 patent, or at the very least a reckless disregard of Merit's patent rights and therefore constitutes willful infringement.

92.     Medline's continued infringing activity has caused and will continue to cause irreparable injury to Merit.

93.     Merit is entitled to a preliminary and permanent injunction under 35 U.S.C. § 283 prohibiting Medline from further making, using, offering to sell, selling, and importing the Infringing NAMIC Device and any other infringing product in order to prevent further irreparable harm to Merit.

94.     Merit is entitled to recover all monetary damages caused by Medline's infringing conduct under 35 U.S.C. § 284, including lost profits and/or reasonable royalties.

## PRAYER FOR RELIEF

WHEREFORE, Merit seeks relief as follows:

1.     That this Court enter judgment that Medline has infringed the asserted claims of the Asserted Patents and that the asserted claims of the Asserted Patents are valid and enforceable;

2.     That this Court enter a preliminary and permanent injunction against Medline prohibiting Medline from any further infringement of the Asserted Patents through making, using, offering to sell, selling, or importing the Infringing NAMIC Device and any other product that infringes one or more claims of the Asserted Patents;

3.     That this Court award Merit all damages caused by Medline's infringing actions, including lost profits and reasonable royalties;

4917-8994-9498\7

4.      That this Court find this case exceptional and award Merit enhanced damages and all attorneys' fees and costs incurred by Merit in this action;

5.      For any further relief that this Court deems equitable and just.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Merit demands a jury trial on all issues so triable.

DATED this 16th day of May, 2025.               Dorsey & Whitney LLP


By: */s/ Mark A. Miller*
Mark A. Miller
Elliot J. Hales
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Email: miller.mark@dorsey.com
            hales.elliot@dorsey.com

*Attorneys for Plaintiff Merit Systems, Inc.*

4917-8994-9498\7